**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | Civil Action No. |
| v. | ) ) ) | |
| BOB'S DISCOUNT FURNITURE, LLC, | ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE
WHY ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

This case is before the Court on the application of the U.S. Equal Employment Opportunity Commission ("EEOC" or the "Commission") for an order to show cause why an administrative subpoena should not be enforced. EEOC is currently conducting an investigation to determine whether Bob's Discount Furniture ("Company" or "Respondent") has engaged in age discrimination in its company-wide layoffs and subsequent recall of employees in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-34 ("ADEA"). The original impetus for the investigation was a charge of discrimination filed by a former Respondent employee under the ADEA alleging discrimination in Respondent's failure to recall him from layoff in 2020, and pursuant to the Commission's broad statutory authority to investigate employers on its own initiative independent of any charge allegations, EEOC subsequently broadened the focus of the investigation to encompass Respondent's layoff and recall practices during and since September 1, 2019. In the course of its investigation, EEOC issued a subpoena seeking evidence relating to its investigation. Respondent has refused to produce a substantial portion of the requested evidence despite its affirmative duty under federal law to make such

evidence available to the Commission upon demand, and that refusal has delayed and hampered the investigation. Accordingly, EEOC applies to this Court for an order compelling Respondent's production of the relevant evidence in adherence to its duties under federal law.

## I. FACTUAL BACKGROUND

Charging Party William Gumhold filed a charge of discrimination with EEOC on April 7, 2021, alleging that the Company subjected him to discrimination because of his age in violation of the ADEA. He specifically alleged that he and other older workers over the age of 65 had been discharged because of their ages as part of Respondent's reduction-in-force during the COVID-19 pandemic in 2020. *See* Exhibit A (Declaration of Karen McDonough, Deputy District Director) at ¶ 4.a. & Attachment 1. EEOC subsequently served Respondent with notice of the charge and commenced investigation of whether the ADEA had been violated. *See* Exb. A at ¶ 4.c. & Attachment 3. On June 21, 2021, Respondent submitted a position statement denying age discrimination, stating that it furloughed and ultimately terminated Charging Party and hundreds of other employees in a nationwide reduction-in-force ("RIF" or "layoff") necessitated by a business downturn during the pandemic. *Id.* at ¶ 4.c. & Attachment 4. In defense of the charge, Respondent cited its interpretation of nation-wide layoff statistics. *Id.* at Attachment 4, pg. 5 & n.2.

As part of its investigation of the parties' contentions, including Respondent's assertions concerning its nationwide RIF, and EEOC's authority to evaluate employer ADEA compliance on its own initiative, on November 24, 2021, EEOC requested that Respondent produce certain relevant evidence by December 30, 2021. *Id.* at ¶ 4.e.& Attachment 5.

EEOC granted two extensions to Respondent, who submitted its response to some of EEOC's requests on February 7, 2022 but failed to voluntarily produce requested information,

which includes: a data compilation identifying information about all persons who worked at any Respondent location nationwide from September 1, 2019 to November 24, 2024 and their layoff and recall status; all documents and communications regarding all processes and selection criteria for layoffs and/or Reduction(s) in Force; and all information and documents related to and describing the ranking system and key performance indicators used to inform and/or determine all Reductions in Force from September 1, 2019 to November 24, 2021. *Id.* at ¶ 4.f. & Attachment 6.

As a result, on February 15, 2023, the Director of the Philadelphia District Office issued and served upon Respondent a subpoena for the evidence identified above. *Id.* at ¶ 4.g. & Attachment 7. The subpoena directed Respondent to produce the evidence by March 1, 2022, and EEOC granted Respondent's request for an extension to March 31, 2022. *Id.* at ¶ 4.i. Respondent provided some material to EEOC on March 31, 2022, April 27, 2022, May 2, 2022, and May 13, 2022, but has failed to provide the following subpoenaed evidence:

(1) a report and transcription of company-wide employee data setting forth various identifying information regarding persons who were employed by Respondent for the time period September 1, 2019 to February 15, 2022 and information concerning their RIF and recall status, *id.* at ¶ 5.a.[1];

(2) categories of relevant employee information that were previously requested but that Respondent refused to produce: middle initials; residence address information; job titles and work locations at time of hire; identification of whether the person was laid off between September 1,

---

[1] Respondent provided only employee information for Charging Party Gumhold's Whitehall, PA store location in response to EEOC's November 24, 2021 Request for Information. In response to EEOC's February 15, 2022 Subpoena, Respondent stated in its April 27, 2022 Letter to EEOC that Charging Party's region is limited to seven stores in Connecticut, one in Massachusetts, four in New York, and seven in Pennsylvania, and it provided information for Sales Associates only in those stores, despite EEOC's requests for information for employees in all positions at all locations.

2019 to February 15, 2022; any numerical or ranking assigned to the person for purposes of layoff or call back from layoff; job title at time of termination resulting from failure to call back from layoff; work location at time of termination resulting from failure to call back from layoff; job title at time of termination for any reason other than failure to call back from layoff (if applicable); work location at time of termination for any reason other than failure to call back from layoff (if applicable); social security number; present job title (if applicable); and present work location (if applicable), *id.* at ¶ 5.b. & Attachment 11;

(3) communications and instructions provided to Respondent employees about all processes and selection criteria for layoffs and/or reductions in force and for recalling employees from layoffs and/or reductions in force that Respondent has not already produced, *id.* at ¶ 5.c. [2]; and

(4) information and documents relating to and describing the ranking system and key performance indicators used to inform and/or determine all reduction(s) in force, *id.* at ¶ 5.d.

To date, Respondent has failed to comply with the subpoena.

## II. ARGUMENT

Respondent has no valid defense for failing to fully comply with the EEOC's subpoena. EEOC subpoena-enforcement proceedings are summary in nature and involve only limited judicial review. *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001); *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 113 (4th Cir. 1997); *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996); *see also Univ. of Med. & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) ("[J]udicial review of administrative subpoenas is 'strictly limited.'")

---

[2] Respondent produced documents labeled BDF-Gumhold_00078-00115 on May 13, 2021 without formally stating to which requests they were responding, if any. Upon examination, these documents do not describe the instructions given to decision-makers concerning the RIF, the procedures to be used, or the selection criteria to be employed.

(citation omitted). To successfully petition a court to enforce an administrative subpoena, the Commission needs only to show that 1) the agency's investigation has a legitimate purpose; 2) the evidence sought is relevant to that purpose; 3) the agency does not already possess the evidence requested; 4) the agency has complied with relevant administrative requirements; and 5) the demand is not "unreasonably broad or burdensome." *EEOC v. Kronos, Inc. (Kronos I)*, 620 F.3d 287, 296 at n.4 (3d Cir. 2010) (citing *Corrigan*, 347 F.3d at 64); *see also Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011); *Karuk Tribe*, 260 F.3d at 1076; *Lockheed Martin*, 116 F.3d at 113; *Tire Kingdom*, 80 F.3d at 450; *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995). Once this showing has been made, a court will enforce the subpoena unless the Respondent can prove that the subpoena is unduly burdensome. *See McLane Co. v. EEOC*, 581 U.S. 72, 77 (2017); *Corrigan*, 347 F.3d at 64; *Quad/Graphics*, 63 F.3d at 645; *EEOC v. Am. & Efird Mills, Inc.*, 964 F.2d 300, 303 (4th Cir. 1992). As the following discussion illustrates, Respondent has no basis to challenge the validity of the subpoena, and, therefore, the subpoena should be enforced.

### A. The investigation is valid and within the agency's authority.

First, Congress has authorized EEOC to conduct compliance investigations under the ADEA. 29 U.S.C. § 626(a). Congress conferred broad investigatory powers upon the Commission in furtherance of its investigatory responsibilities, granting the EEOC the right to obtain access to records "relating to any matter under investigation." 15 U.S.C. § 49 (incorporated in Section 9 of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 209, and, through that section, in Section 7(a) of the ADEA, 29 U.S.C. § 626(a)).

Notably, while EEOC is investigating a pending charge of discrimination alleging class-wide age discrimination in layoffs and recall, EEOC's ADEA investigation is not constrained by

the nature and scope of those allegations.  The ADEA authorizes EEOC to conduct an investigation of whether any covered employer is in compliance with the ADEA without the need for any charge of discrimination. *See* 29 U.S.C. § 626(a) (incorporating Sections 9 and 11 of the Fair Labor Standards Act, 29 U.S.C. §§ 209 & 211); 29 C.F.R. § 1626.4 (citing Sections 6 and 7 of the ADEA).

Both the ADEA and Equal Pay Act ("EPA") incorporate provisions of the FLSA, conferring upon EEOC the same authority granted to the U.S. Department of Labor ("DOL"), *see* 29 U.S.C. § 626(b); *Mount Lemmon Fire Dist. v. Guido*, 139 S. Ct. 22, 26 (2018), authority that is broader than EEOC's Title VII investigative authority, 42 U.S.C. § 2000e et seq. Unlike under Title VII, EEOC's authority to investigate whether there have been ADEA and EPA violations is not constrained by the need for a valid charge. *See* 29 C.F.R. § 1620.30 (EPA); § 1626 (ADEA); *see also EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 701 (7th Cir. 2002) (EEOC's authority under ADEA not circumscribed by charges filed); *EEOC v. Merrill Lynch, Pierce, Fenner & Smith*, 677 F. Supp. 918, 928 (N.D. Ill. 1987) (discussing broad scope of EEOC's authority under EPA).

Section 11(a) of the FLSA, as incorporated by Section 7(a) of the ADEA, provides EEOC with the following authority:

> [To] investigate and gather data regarding the wages, hours, and other conditions and practices of employment[,] . . . enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as [the agency] may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter.

29 U.S.C. § 211(a) (incorporated by reference in 29 U.S.C. § 626(a)).

Thus, like DOL's Wage and Hour Division, EEOC is authorized to investigate employers to evaluate whether they are in compliance with the ADEA without a charge, complaint or any

particularized suspicion that the law is being violated. *See id*; 29 C.F.R. § 1626.15(a); 29 C.F.R. § 1627.6 ("All records required by this part to be kept shall be made available for inspection and transcription by authorized representatives of the Commission [. . .]"); *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (stating FTC "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."); *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208-09 (1946); *Merrill Lynch*, 677 F. Supp. at 927-28.

The investigation seeks to determine if Respondent has engaged in age discrimination; such an investigation has a legitimate purpose within the agency's statutory authority, and thus, the first prong of the test has been satisfied.

### B. The information sought is relevant to the investigation.

Next, the information sought by the subpoena is relevant to the Commission's investigation. The concept of relevancy during an EEOC investigation is broader than relevancy during litigation. By incorporation, Section 7(a) of the ADEA grants the EEOC access to records "relating to any matter under investigation." 15 U.S.C. § 49 (incorporated in Section 9 of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 209, and, through that section, in Section 7(a) of the ADEA, 29 U.S.C. § 626(a)). The statute grants the EEOC "broad investigatory authority, independent of the proper filing of an employee charge." *Am. & Efird Mills*, 964 F.2d at 303. When reviewing this broad investigatory authority, courts will enforce an administrative subpoena "if the material subpoenaed touches a matter under investigation." *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982) (citation and internal quotation marks omitted); *see also Kronos I*, 620 F.3d at 296 (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984)) (holding, with regard to the ADA, that "The relevance requirement is not particularly onerous. Courts have given broad

construction to the term 'relevant' and have traditionally allowed the EEOC access to any material that 'might cast light on the allegations against the employer.'").

It is undeniable that the requested information "touches a matter under investigation," *Elrod*, 674 F.2d at 613. EEOC requested information regarding Respondent employees, encompassing both terminations (including the reductions-in-force) and hiring (i.e., any persons who may have replaced workers subject to RIF). Respondent has refused to produce such data for any regions other than the single region where Charging Party Gumhold worked. Respondent has also unilaterally restricted its production to only persons in Sales Associate positions in 2020, disregarding EEOC's request for evidence production concerning employees in all positions during the time period September 1, 2019 to February 15, 2022.

The requested information, including the identity, dates of birth, and contact information of such employees clearly touches the issue under investigation – whether Respondent subjected workers to age discrimination in its RIF, recall and replacement hiring practices. Information about employee terminations, recalls, positions held, birthdates and similar employee data required by Subpoena Request No. 8 will enable statistical analyses of Respondent's RIF and recall patterns to determine whether there were age-based disparities in those practices.[3] Such statistical evidence is highly relevant to an investigation of whether an employer is engaged in age-discriminatory lay-off and recall practices, as well as various other forms of discrimination practice. *See, e.g., Seasonwein v. First Montauk Sec. Corp.*, 189 F. App'x 106, 110 (3d Cir. 2006) (holding in age discrimination case that "[c]ourts have long recognized that statistical evidence can be used in

---

[3] Indeed, Respondent itself conceded the relevancy of its nationwide employee data to EEOC's investigation, placing that evidence at issue when it cited to the data, including the age of employees and the incidence of layoffs, in its Position Statement submitted to EEOC during the investigation. Attachment 4.

disparate treatment as well as disparate impact cases") (citations omitted); *Hormann v. NW Sign Indus., Inc.*, No. CIV.A. 08-CV-3913JEI, 2009 WL 2751027, at *3 (D.N.J. Aug. 26, 2009) (analyzing and finding employee reduction-in-force age data evidence sufficient to raise a jury question on whether the employer retained sufficiently younger employees in disparate treatment age discrimination case). Request No. 8 will also provide the Commission with the identities and contact information of persons with relevant knowledge of whether Respondent has engaged in age-discriminatory RIF, recall and related replacement hiring practices, such as witnesses who were affected by the RIF, those unaffected by the RIF, those who were or were not recalled from the RIF, and those who witnessed or implemented the RIF and recalls. Request No. 8 also encompasses information about employees chosen for hire in the affected jobs after the RIF, and information about the age composition of that cohort of workers and the jobs for which they were hired, which is highly probative of whether Respondent's motivation for its RIF decisions and recall decisions, i.e., whether it engaged in a practice of replacing older workers subject to RIF with younger workers.

EEOC has also requested production of the records described *supra*, including communications and instructions provided to Respondent employees about processes and selection criteria for layoffs and/or reductions-in-force; processes and selection criteria for recalling employees from layoffs and/or reductions-in-force; and information and documents relating to and describing the ranking system and key performance indicators used to inform and/or determine all reduction(s) in force. *Id.* at Attachment 7, Requests No. 10 & 11.  EEOC's Requests No. 10 and 11 are tailored to obtain evidence to determine whether the Respondent has unlawfully discharged older workers from the company. The content of such information obviously touches the heart of Respondent's layoffs and how the alleged employment practice may have been implemented. *See,*

*e.g., Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (noting in a disparate impact case the need to identify the specific employment test, requirement, or practice at issue that leads to the statistical disparity based on age); *First Montauk Sec. Corp.*, 189 F. App'x at 109 (placing employer's explanations of how it determined which workers would be selected for layoff at issue in disparate impact analysis).

    As discussed above, although the requested evidence is relevant to the charge of discrimination that originally triggered EEOC's investigation, Respondent has no legal basis to challenge the subpoena as irrelevant to that charge, as EEOC is authorized by statute to investigate all aspects of Respondent's ADEA compliance regardless of whether any charge has been filed or whether there is any reason to believe the ADEA has been violated. *See* discussion *supra* pp. 6-7, 7-8.

    That authority, untethered to any charge-filing requirement, necessarily grants EEOC authority to define the relevant temporal scope of an ADEA investigation. And even where a charge is required for EEOC to conduct an investigation, such as a Title VII proceeding, the federal courts have consistently acknowledged EEOC's discretion and authority to obtain evidence for multi-year periods far lengthier than that at issue in this case. *See, e.g., Kronos I*, 620 F.3d at 299 (holding that "[t]he District Court also too narrowly circumscribed the subpoena when it instituted the temporal limitation of January 1, 2006 through May 31, 2007" because in part "[e]vidence related to the employment practice under investigation prior to and after [the] charge [of discrimination] provides valuable context that may assist the EEOC in determining whether discrimination occurred."); *EEOC v. Randstad*, 685 F.3d 433, 451 (4th Cir. 2012) (concluding that "the thirteen-office, five-year scope of the subpoena was not an unreasonable exercise of the EEOC's discretion"); *EEOC v. Roadway Express, Inc.*, 261 F.3d 634, 641-42 (6th Cir. 2001)

(allowing EEOC to seek information for a time period beyond that specifically alleged in the charge, including information after the filing of the charge); *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47-48 (6th Cir. 1994) (appellate court enforced EEOC subpoena for documents going back 12½ years as to charging party; limited documents regarding all other employees to three years and 300 days before charge; older documents regarding all employees could be requested later if initial investigation established their relevance).

In the instant case, EEOC has limited the temporal scope of the subpoena to an approximately two-and-a-half-year period from September 1, 2019 to February 15, 2022, which encompasses Respondent's layoff and recall period and a reasonable timeframe pre- and post-dating that period. Evidence for that timeframe will enable the Commission to identify the age composition of Respondent's employees affected by its layoff and recall, as well as the age composition of its workforce before and after the layoff and hiring patterns after its layoff.  Such evidence is plainly relevant to investigation of whether Respondent has complied with the ADEA.

Thus, Respondent's decisions to unilaterally provide a narrower scope of information than EEOC requested were improper. For example, Respondent first unilaterally produced only employee information for Charging Party's Whitehall, PA store in response to EEOC's RFI, and omitted several data fields that EEOC requested. Then, after noting Respondent's deficient response and subpoenaing the nationwide employee information, Respondent unilaterally decided to provide only employee information in Charging Party's region and provided only information for Sales Associates instead of employees in all positions, and provided only information for 2020, not the period requested by EEOC, which also includes part of 2019, 2021, and 2022. Respondent's conduct flagrantly disregards EEOC's authority and discretion about the conduct of the investigation. As the Supreme Court stated in *University of Pennsylvania v. EEOC*, "'[A]n alleged

perpetrator of discrimination cannot be allowed to pick and choose the evidence which may be necessary for an agency investigation.'" 493 U.S. 182, 193 (1990) (quoting *EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 116 (3d Cir. 1985)).

In that regard, EEOC notes that even in the absence of any subpoena, under the ADEA and EEOC record-keeping regulations promulgated pursuant thereto, Respondent has an affirmative legal duty to produce to EEOC, upon demand, the categories of evidence requested in this matter. The ADEA provides that the Commission has authority to "make investigations and require the keeping of records necessary or appropriate for the administration of [the ADEA] in accordance with the powers and procedures provided in sections 209 and 211 of [the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 209 & 211]." 29 U.S.C. § 626(a).

In furtherance of the Commission's ADEA investigatory authority, Section 11(c) of the FLSA, also incorporated by Section 7(a) of the ADEA, provides that every employer covered by the statute (1) "shall make, keep, and preserve" records of its employees' wages, hours, and other conditions and practices of employment; and (2) "shall make such reports therefrom to the Administrator as [it] shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder." 29 U.S.C. § 211(c) (incorporated by reference in 29 U.S.C. § 626(a)).

EEOC's ADEA record-keeping, inspection and reporting regulations at Part 1627 were promulgated pursuant to the Commission's Section 7(a) authority. 29 C.F.R. § 1627.1. EEOC's regulations at 29 C.F.R. § 1627.1-1627.11 set forth the ADEA record keeping requirements, which include but are not limited to (1) making and keeping three years of payroll or other records for each employee which contain: Name; Address; Date of birth; Occupation; Rate of pay, and Compensation earned each week; and (2) retaining employment or personnel records made,

obtained or used in the regular course of business, including records "related to" "layoff" and "discharge," for at least one year or until final disposition of the Section 7 proceeding to which they relate. 29 C.F.R. § 1627.1-1627.11. The regulatory language is clear that any records an employer is required to maintain or preserve under the ADEA/FLSA "shall be available for inspection and transcription by [EEOC] or a duly authorized and designated representative." 29 C.F.R. § 1627.6. The scope of any ADEA records request need only be reasonably relevant to examining whether the Act has been violated in any manner. *See, e.g., Morton Salt Co.*, 338 U.S. at 652; *Okla. Press,*, 327 U.S. at 208; *Detweiler Bros.*, 157 F.2d at 843.

EEOC may also require an employer to compile transcriptions and make reports of information set forth in any records that it is required to maintain under the ADEA/FLSA. *See* 29 U.S.C. § 211(c) ("Every employer . . . shall make such reports therefrom to [EEOC] as [it] shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter . . ."); 29 C.F.R. § 1627.7 (Entities subject to the Act "shall make such extension, recomputation or transcriptions of his records and shall submit such reports concerning actions taken and limitations and classifications of individuals set forth in records as the Commission or its authorized representative may request in writing."); *see also* 29 C.F.R. §§ 516.7 & 516.8; 29 C.F.R. § 1620.30(a); 29 C.F.R. § 1620.32(a) (similar regulations allowing transcription of records under the FLSA and EPA). Each employer "shall make such extension, recomputation, or transcription of the records" and "shall submit to [EEOC] such reports concerning persons employed and the wages, hours, and other conditions and practices of employment set forth in the records as [EEOC] or a duly authorized and designated representative may request in writing." EEOC office directors and their designees are authorized to require submission of reports,

13

recomputations and transcriptions of records under 29 C.F.R. § 1627.7. 29 C.F.R. § 1626.15(a)(4) & (e).

EEOC is authorized by ADEA Section 7(a) to institute actions to compel access to records and submission of reports under the aforementioned record-keeping and reporting regulations. *See* 29 U.S.C. § 626(a) (incorporating by reference authority conferred by 29 U.S.C. §§ 211(c) & 217). The federal courts have long-held that EEOC and DOL possess authority to compel such access and reporting and obtain injunctions of employer non-compliance under the materially identical EPA and FLSA regulations. *See Merrill Lynch*, 677 F. Supp. at 920-21, 932 (granting summary judgment to EEOC in EPA case brought under 29 U.S.C §§ 211(c) & 217 of the FLSA, ordering employer to produce a report of equal pay-related information requested by EEOC Acting District Director); *Walsh v. Elder Resource Mgmt., Inc.*, No. 2:19-CV-00546-CCW, 2022 WL 3134085, at *14 (W.D. Pa. Aug. 5, 2022) (finding employer failure to reorganize records and aggregate information requested by DOL violated Part 516 recordkeeping requirements); *Reich v. RPT PRN, LLC*, No. SA CV96–485–AHS (EEX), 1996 WL 728159, at *5 (C.D. Cal. Oct. 30, 1996) (holding failure of defendant to produce payroll and time records pursuant to DOL written request constituted violation of FLSA Section 11(c) and regulation at 29 C.F.R. § 516.7 requiring employer to grant DOL access to records), *aff'd sub nom.*, *Herman v. RPT PRN, LLC*, 172 F.3d 56 (9th Cir. 1999); *Marshall v. New Floridian Hotel, Inc.*, No. 77-1028-Civ, 1979 WL 1991, at *10, 12 (S.D. Fla. Aug. 29, 1979) (enjoining employer failure to grant access to wage and hour records under 29 C.F.R. § 516.7(b)).

Respondent has failed to produce evidence described, *supra*. These requests are subject to Respondent's transcription duty under Section 1627.7 and reporting and record-keeping duties under Section 1627.3 and to which EEOC is entitled to access under Section 1627.6.

Thus, the information is relevant to the investigation, Respondent has a pre-existing legal duty to produce it to EEOC upon request, and therefore, the subpoena should be enforced.

### C. Respondent has not produced and EEOC does not already possess the evidence requested.

EEOC has not already received the evidence it seeks in the subpoena and does not otherwise possess the evidence sought in the subpoena. *See* Exb. A at ¶ 5. Accordingly, EEOC has demonstrated this element is satisfied.

### D. The Commission has fulfilled all procedural requirements.

Next, the ADEA does not set forth any special procedures that the EEOC must follow before it may issue a subpoena or seek judicial enforcement of such a subpoena. "[T]he EEOC's role in combating age discrimination is not dependent on the filing of a charge; the agency may receive information concerning alleged violations of the ADEA 'from any source,' and it has independent authority to investigate age discrimination." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). *See also Sidley Austin Brown & Wood*, 315 F.3d at 701 (unlike Title VII, existence of a charge not required under ADEA); *Tire Kingdom*, 80 F.3d at 451-52 & n.2 (11th Cir. 1996) (same); *Am. & Efird Mills*, 964 F.2d at 304 (same); 29 C.F.R. § 1626.4 (stating that the Commission may conduct investigations "on its own initiative"); 29 C.F.R. § 1626.13 ("Because the Commission has independent investigative authority, *see* § 1626.4, it may continue any investigation and may secure relief for all affected persons notwithstanding a request by a charging party to withdraw a charge.").

Moreover, the subpoena complies with the EEOC's regulation governing the issuance and contents of ADEA subpoenas, 29 C.F.R. § 1626.16(b).[4] The subpoena was issued by an

---

[4] 29 C.F.R. § 1626.16(b) provides, in relevant part:

appropriate authority and contains all the information specified in the regulation. *See* Exb. A at ¶ 4.g. & Attachment 7. This element is, therefore, satisfied.

### E. EEOC's subpoena is not unreasonably broad and compliance with the subpoena will not impose an undue burden on Respondent.

The subpoena must be enforced unless Respondent demonstrates that the subpoena is unreasonably broad or compliance with the subpoena would threaten the normal operation of the business. See *Kronos I*, 620 F.3d at 296, n.4; *Quad/Graphics, Inc.*, 63 F.3d at 648; *Randstad*, 685 F.3d at 442. *Accord EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 476-79 (4th Cir. 1986); *EEOC v. Sunoco, Inc. (R & M)*, No. CIV.A. 08-MC-145, 2009 WL 197555, at *6 (E.D. Pa. Jan. 26, 2009); *cf. EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (without explicitly addressing the standard for burdensomeness, court stated a balancing test—"Essentially, this court's task is to weigh the likely relevance of the requested material to the investigation against the burden to Ford of producing the material."—in a case in which the court was focused on the relevant time period for EEOC's investigation).

Respondent carries a "difficult burden" in this regard. *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002). "There is a presumption in favor of requiring an employer's compliance with a subpoena when the Commission inquires into legitimate matters of public interest." *EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 371 (7th Cir. 2011). And conclusory allegations that it would be burdensome to respond to the subpoena are not sufficient to meet the Respondent's burden. *Id.*; *United Air Lines*, 287 F.3d at 653.

---

The power to issue subpoenas has been delegated by the Commission, pursuant to section 6(a) of the Act, to the General Counsel, the District Directors, . . . or their designees. The subpoena shall state the name, address and title of the issuer, identify the person or evidence subpoenaed, the name of the person to whom the subpoena is returnable, the date, time and place that testimony is to be given or that documents are to be provided or access provided.

The federal courts have routinely rejected claims of undue burden in circumstances more compelling than those presented here.

For instance, in *EEOC v. Maryland Cup Corp.*, 785 F.2d 471 (4th Cir. 1986), the Fourth Circuit held that it was not unduly burdensome to require the company to spend $75,000 to compile information given that the employer did not show that this cost was burdensome in light of normal operating costs or that gathering the information would threaten operations. *Id.* at 479.

Similarly, in *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036 (10th Cir. 1993), the Tenth Circuit rejected an assertion by the employer that compliance with the subpoena was unduly burdensome because it would take two full-time employees six months. *Id.* at 1040.

EEOC's requests in the instant case are not burdensome. Indeed, Respondent has cited in summary fashion its own nationwide reduction-in-force data and has provided some of the requested data for one region of its operations, suggesting that the company must have such information readily available. *See* Exb. A at Attachment 4. Further, Respondent has produced a list of the data fields used within its store payroll and personnel data software vendor, Workday, suggesting that Respondent possesses data fields responsive to EEOC's requests that can be exported for production. *Id.* at Attachment 9, Response to Request No. 12. Finally, Respondent has significant financial resources, as it is considered one of the top ten largest U.S. furniture chains with 169 locations in 24 states and over $2 billion in annual sales.[5] Respondent has the burden to establish that compliance would entail an unreasonable burden, and it cannot do so.

---

[5] https://www.mybobs.com/stores (Last visited May 23, 2023); https://blog.mybobs.com/bobs-discount-furniture-recognized-as-top-10-u-s-furniture-store-for-third-consecutive-year/ (Last visited May 23, 2023); https://blog.mybobs.com/bobs-discount-furniture-appoints-william-g-bill-barton-as-ceo/ (Last visited May 23, 2023); https://blog.mybobs.com/bobs-discount-furniture-career-exploration-day-with-urban-league-of-greater-hartford/ (Last visited May 23, 2023).

## III. CONCLUSION

For the foregoing reasons, the Court should enforce the subject administrative subpoena. The subpoena seeks evidence relevant to an investigation well-within EEOC's statutory authority under the ADEA, and Respondent cannot establish that complying with the subpoena would be unduly burdensome. Accordingly, EEOC respectfully requests that the Court enter the accompanying proposed Order to Show Cause, and after giving Respondent an opportunity to be heard, enter an order enforcing the subpoena.

Respectfully submitted,

s/ Ronald L. Phillips
RONALD L. PHILLIPS
ASSISTANT REGIONAL ATTORNEY
Ohio I.D. # 0070263
(410) 801-6714
ronald.phillips@eeoc.gov

s/ Casey M. Shea
CASEY M. SHEA
SENIOR TRIAL ATTORNEY
MD Bar No. 1706200165
(*Pro Hac Vice* Application pending)
(410) 801-6728
casey.shea@eeoc.gov

EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, Maryland 21201
(443) 992-7880 (facsimile)

*Counsel for Petitioner U.S. Equal Employment Opportunity Commission*